IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHNNY L. LOVE, SR.,

        Plaintiff,

v.

PATRICK R. DONAHOE,
Postmaster General of the
United States Postal Service,

        Defendant.

Case No. 14 C 7878

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment [ECF No. 12]. For the reasons stated herein, the Motion is denied.

### I. BACKGROUND

The following facts are undisputed except where noted. Plaintiff, Johnny Love ("Plaintiff"), began his employment with Defendant, the United States Postal Service ("Defendant"), in February 1986. During his employment with Defendant, he has always been a member of the American Postal Workers Union (the "APWU"). Beginning in November 2012, Plaintiff was assigned to work as a mail processing clerk at the Palatine Processing and Distribution Center (the Palatine "P&DC"), where he was responsible for processing waste mail. Plaintiff remained in that position at all times relevant to this lawsuit.

## A. Prior EEOC Activity

Plaintiff has previously filed two EEO complaints with the Equal Employment Opportunity Commission (the "EEOC") against Defendant. The first, filed in 2011, alleged that three of his supervisors — Brenda Valentine, George Webber, and Josie Angles — improperly sought to have him work in unsafe conditions in retaliation for a complaint he had filed with OSHA. This EEO complaint was dismissed in July 2011. Plaintiff did not appeal the dismissal of the EEO complaint or file a lawsuit based on its dismissal.

Plaintiff filed his second EEO complaint in May 2012. In it he alleged that one of his supervisors — Josie Angles — made fun of him at work, and that another supervisor — Jeff Mayo ("Mayo") — withheld higher-level work assignments from him on account of his race and sex. The parties settled the EEO claim against Jeff Mayo in September 2013, and the claim against Josie Angles was ultimately dismissed.

Around the middle of March 2013, Plaintiff claims that he and Mayo had an unpleasant encounter. Specifically, Plaintiff — who serves as safety captain during his shifts at the Palatine P&DC — alleges that he approached Mayo regarding an employee who was working in an unsafe manner, and rather than tell the employee to correct his conduct, Mayo turned to Plaintiff and said, "when I see you doing something, I'm going to do more than

just talk to you." Plaintiff took this as a threat and reported it to his fellow coworkers and Union representatives, but did not file an EEO complaint. Defendant denies this interaction ever occurred.

**B.  Events leading to current lawsuit**

Theresa Caminata ("Caminata") was transferred into the role of acting supervisor of distribution operations at the Palatine P&DC in February 2013, but Plaintiff claims the two did not meet until the latter part of March 2013. At that time, Plaintiff claims he spoke with Caminata, but he was unaware she was his supervisor. A few days later, on or around March 25, 2013, Caminata approached Plaintiff and instructed him to report to a work area known as the "multi-line." Plaintiff, confused as to who Caminata was and what authority she had to give him instructions, refused to comply. Consequently, Caminata called two other supervisors, Shaun Withers ("Withers") and Latifa Tilman ("Tilman"), for assistance. Withers and Tilman arrived and told Plaintiff to go work on the "multi-line." Plaintiff complied with their instructions. It is disputed whether, during this interaction, Withers and Tilman also informed Plaintiff that Caminata was his supervisor and that he was therefore required to follow her instructions.

A few days later, on or about the evening of March 27, 2013, Caminata again approached Plaintiff, this time to ask him

for his medical restrictions so that she could determine whether he would be able to work on a certain machine. What occurred next is largely disputed. Plaintiff claims he asked Caminata who she was, what her position was, and by what authority she was requesting to see his medical restrictions. Defendant claims Plaintiff simply refused to show Caminata his restrictions, telling her that he did not recognize her as a supervisor because she was not wearing a badge. In any case, Plaintiff refused to show Caminata his restrictions, and Caminata contacted her supervisor, Roger Bharel ("Bharel"), for assistance. Shortly thereafter, Bharel and Mayo, came to where Plaintiff and Caminata were located and advised Plaintiff that Caminata was his supervisor.

The parties dispute whether, after being identified as Plaintiff's supervisor, Caminata repeated her request to see his restrictions, and if so, whether Plaintiff refused such request. Either way, Gary Kaiser ("Kaiser"), senior manager of distribution operations at the Palatine P&DC, was notified of the incident. Kaiser arrived at the location and informed Plaintiff that Caminata was his supervisor and that he was therefore required to follow her instructions. Again, it is disputed whether, at this point, either Caminata or Kaiser repeated the request to see Plaintiff's restrictions. Defendant claims that, as a result of Plaintiff's repeated refusal to

follow instructions and show Caminata his restrictions, the supervisors present agreed to put Plaintiff on emergency placement for insubordination. Plaintiff admits that he was put on emergency placement for insubordination, but denies that he repeatedly refused to show Caminata — or any supervisor — his restrictions, or that he failed to follow instructions. In any event, as a result of the emergency placement, Plaintiff was sent home without pay and placed on non-duty status.

As it turned out, Caminata was a temporary supervisor, otherwise known as a 204(b) supervisor. 204(b) supervisors are bargaining unit employees who are utilized in a supervisory position for a temporary amount of time, as deemed necessary by management. It is disputed whether, pursuant to negotiated agreements between Defendant and the APWU, 204(b) supervisors are required to wear a badge identifying themselves as a temporary supervisor, and whether bargaining unit employees are required to follow instructions given by someone not wearing a badge. Throughout her interaction with Plaintiff, Caminata was not wearing a badge identifying herself as a temporary supervisor. Plaintiff claims that if Caminata had been wearing a badge when she asked to see his restrictions, he would have complied with her request.

On March 30, 2013, Caminata sent Plaintiff a notice of emergency placement that informed Plaintiff he was being placed

on non-duty status, without pay, pending completion of an investigation into his subordination, as required under Article 16.7 of the collective bargaining agreement between Defendant and the APWU. This section permits management to place employees on non-duty status, without pay, under the emergency placement procedures for engaging in certain acts of egregious misconduct, including "intoxication (use of drugs or alcohol), pilferage, or failure to observe safety rules and regulations, or in cases where retaining the employee on duty may result in damage to U.S. Postal Service property, loss of mail or funds, or where the employee may be injurious to self or others." (Article 16.7 Collective Bargaining Agreement.) The parties dispute whether this section also covers insubordination.

Caminata subsequently scheduled an investigative interview with Plaintiff on April 3, 2013. What occurred at that interview is also largely disputed. Defendant claims that when Plaintiff was given a chance to explain his actions he told Caminata, "[y]ou did not have a badge, you are not a supervisor, and you were not giving me instructions." Plaintiff denies making this statement. Instead he claims that he was not given a chance to explain himself during the interview because any time he attempted to speak Gary Kaiser would cut him off or speak over him. Following the interview, Caminata prepared a

discipline action request to have Plaintiff removed from his position with Defendant. Bharel concurred with this request. On April 11, 2013, Plaintiff was issued a notice of removal for "Insubordination/failure to follow instructions." The notice stated that Plaintiff's actions violated a number of provisions of the Postal Service's Employee and Labor Relations Manual, which warranted removal as a departure from progressive discipline.

After the notices of emergency placement and removal were issued to Plaintiff, the APWU filed a grievance on his behalf challenging the discipline. To resolve the grievance, Defendant agreed to rescind the emergency placement and pay Plaintiff for any work missed. Defendant also unilaterally rescinded Plaintiff's removal and reduced the discipline to a suspension. Thereafter, Defendant and the APWU agreed that Plaintiff's grievance was moot. Following the grievance settlement, in July 2013, Plaintiff filed an EEO complaint alleging, in part, that the emergency placement and removal were issued in retaliation for his prior EEO activity. The EEOC sent Plaintiff a notice of his right to file a lawsuit in July 2014, and this suit followed.

## II. **LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are those that affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party may meet its burden by showing "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). If the moving party satisfies its initial burden, the non-moving party must demonstrate with evidence "that a triable issue of fact remains on issues for which [it] bears the burden of proof." *Knight v. Wiseman,* 590 F.3d 458, 463–64 (7th Cir. 2009).

The judge's role at summary judgment is not to make credibility determinations or weigh the evidence. *Washington v. Haupert,* 481 F.3d 543, 550 (7th Cir. 2007). In determining whether a genuine issue of material fact exists, the Court construes all evidence in the light most favorable to the non-moving party. *See, Bellaver v. Quanex Corp.,* 200 F.3d 485, 491-92 (7th Cir. 2000).

### III. <u>ANALYSIS</u>

Title VII makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C.

§ 2000e-3(a). This type of discrimination is commonly referred to as retaliation. A plaintiff may pursue a claim for retaliation under either the direct method or the indirect, burden-shifting method of proof. *Tomanovich v. City of Indianapolis,* 457 F.3d 656, 662 (7th Cir. 2006). Plaintiff asserts that he has presented sufficient evidence to avoid summary judgment under both the direct and indirect methods. The Court considers each method of proof in turn.

**A. Direct Method**

Under the direct method, a plaintiff must show that "(1) he engaged in statutorily protected activity; (2) he suffered an adverse action taken by the employer; and (3) [there was] a causal connection between the two." *Moser v. Ind. Dept. of Corr.,* 406 F.3d 895, 903 (7th Cir. 2005). A plaintiff may use two types of evidence under the direct method of proof: "direct evidence" or "circumstantial evidence." *Rudin v. Lincoln Land Cmty. Coll.,* 420 F.3d 712, 720-21 (7th Cir. 2005). Direct evidence is evidence "which (if believed by the trier of fact) will prove the fact in question without reliance upon inference or presumption." *Id.* at 720 (quotations omitted). Direct evidence generally involves an admission or a statement by the decision maker regarding his retaliatory intent. Circumstantial evidence "allows the trier of fact to *infer* [retaliation] by the decisionmaker." *Id.* Where a plaintiff relies on circumstantial

evidence under the direct method of proof, the evidence must point directly to a discriminatory reason for the employer's action. *Mullin v. Temco Machinery, Inc.*, 732 F.3d 772, 777 (7th Cir. 2013).

Plaintiff easily satisfies the first two elements a *prima facie* case under the direct method. He engaged in activities protected by Title VII when he filed his two EEO complaints, 42 U.S.C. § 2000e-3(a), and he suffered an adverse employment action when he was put on emergency placement and removed from his position, *O'Neal v. City of Chicago,* 588 F.3d 406, 409 (7th Cir. 2009) (defining an adverse employment action as one that might dissuade a reasonable worker from making or supporting a charge of discrimination). Whether Plaintiff can satisfy the third element — a causal connection between these two events — requires a more stringent analysis.

Plaintiff filed his second EEO complaint in May 2012, approximately ten months before the adverse employment action occurred. Although a gap of this length is generally insufficient to establish a causal connection, *see, e.g., Longstreet v. Ill. Dep't. of Corr.,* 276 F.3d 379, 384 (7th Cir. 2002) (holding that a four-month gap was too attenuated to establish a causal connection), the timing becomes more suspicious in light of the fact that settlement negotiations for this EEO complaint were ongoing throughout the period in which

the alleged retaliation occurred.  In fact, Plaintiff's second EEO complaint was not settled until September 2013 — nearly six months after Plaintiff suffered the claimed retaliatory employment action.

That being said, "suspicious timing alone rarely is sufficient to create a triable issue." *Moser,* 406 F.3d at 905. On summary judgment, in particular, "it is clear that mere temporal proximity is not enough to establish a genuine issue of material fact." *Wyninger v. New Venture Gear, Inc.,* 361 F.3d 965, 981 (7th Cir. 2004).  Plaintiff, in an attempt to demonstrate further evidence of retaliatory motive, points to what he terms as a "convincing mosaic of circumstantial evidence."  Specifically, Plaintiff notes that:  (1) the collective bargaining agreement does not allow for emergency placement for insubordination; (2) Mayo threatened Plaintiff the same month the adverse employment action occurred; and (3) similarly situated employees displayed more egregious misconduct yet were punished less harshly than Plaintiff.  Defendant contests this evidence, and argues that even if true, it is irrelevant under the direct method of proof because it is not evidence of a retaliatory motive by the *decision maker*.

The Court agrees with Defendant.  The evidence Plaintiff has presented does not point directly to a retaliatory motive. A convincing mosaic must include evidence from which an

inference of retaliatory intent could be drawn. Plaintiff has not presented any evidence that the two supervisors responsible for the issuance of his notice of removal — Caminata and Bharel — had knowledge of his prior EEO activity at the time the notice was issued. Without knowledge of the protected activity, retaliation is impossible. Although Plaintiff has proved that Mayo knew of at least one of the prior EEO complaints, Mayo did not issue the notice of removal and was only tangentially involved in Plaintiff's emergency placement. Plaintiff's other circumstantial evidence is not enough to overcome this deficiency.

### B. Indirect Method

Turning to the indirect method, Plaintiff may establish a *prima facie* case by showing that: (1) he engaged in a statutorily protected activity; (2) he met the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in the statutorily protected activity. *Moser,* 406 F.3d at 903. "If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to present evidence of a non-discriminatory reason for its employment action." *Adusumilli v. City of Chicago,* 164 F.3d 353, 362 (7th Cir. 1998). "If the employer meets its burden, the burden shifts back to the plaintiff to

demonstrate that the employer's reason is pretextual." *Moser,* 406 F.3d at 904. As discussed above, Plaintiff has satisfied elements one and three of a *prima facie* case, thus the Court will focus its analysis on the remaining elements.

Plaintiff claims that while Defendant strictly enforced its policies against him, it did not do so with respect to similarly situated employees who had not filed an EEO complaint. Whether a comparator is similarly situated is "usually a question for the fact-finder," and summary judgment is appropriate only when "no reasonable fact-finder could find that [plaintiff has met his] burden on the issue." *Srail v. Village of Lisle,* 588 F.3d 940, 945 (7th Cir. 2009). An employee is similarly situated if "directly comparable" to the plaintiff "in all material respects." *Raymond v. Ameritech Corp.,* 442 F.3d 600, 610-11 (7th Cir. 2006). But to meet this standard, a plaintiff and an employee "need not be identical in every conceivable way." *Patterson v. Ind. Newspapers, Inc.,* 589 F.3d 357, 365-66 (7th Cir. 2006).

Plaintiff has presented evidence that other similarly situated employees — two bargaining unit mail clerks — committed more egregious acts of insubordination, yet were punished less harshly than him. Specifically, Plaintiff has identified Allen Eiermann ("Eiermann") and Bill Ruckman ("Ruckman") as comparators.

Plaintiff alleges that on or around February of 2012, Eiermann had an outburst after getting injured while working. Plaintiff witnessed Supervisor Josie Angles asking Eiermann to calm down and Eiermann telling her in a loud voice, "fuck that, I'm not calming down." Eiermann then cursed at Angles, picked up a tray of mail off a hand-truck, took one step, stopped, turned around, and then threw the tray back onto the hand-truck, saying "fuck this I don't give a fuck." At this point, Supervisor Mayo told Eiermann that he needed to quiet down and go back to his machine. Plaintiff heard Eiermann again use the word "fuck" as he was walking away from Mayo. This episode occurred in front of several employees. Plaintiff presented the statement of Jacque Jackson, which largely confirms Plaintiffs account of this event. Eiermann did not receive emergency placement or a notice of removal for his actions.

Plaintiff also alleges that, on multiple occasions throughout 2012 and 2013, he personally witnessed Ruckman respond to Mayo's requests to perform work by stating, "I'm not doing that shit, that's not my job." Plaintiff also claims to have witnessed Ruckman regularly degrade Supervisor Lavanica McKnight, by calling her "dump", "stupid" and "idiot" in a loud and aggressive manner. Ruckman never received an emergency placement or notice of removal for these actions.

Although Defendant disputes this evidence, at this stage, the Court must construe all evidence in the light most favorable to Plaintiff. Defendant argues that the employees Plaintiff points to as comparators are not "similarly situated" because the alleged misconduct and the disciplining supervisors were not the same. The Court finds the question of similarity to be one of degrees. Although the alleged misconduct of Plaintiff's comparators is not identical to Plaintiff's alleged misconduct, it is similar enough in that it falls within Article 16.7 of the collective bargaining agreement between Defendant and the APWU — the section under which Plaintiff was punished. The alleged misconduct constituted insubordination, and it may have "result[ed] in damage to U.S. Postal Service property" or "the employee [being] injurious to self or others." (Article 16.7 Collecting Bargaining Agreement.) Likewise, the disciplining supervisors, although not the same people, were individuals in the same position of power, and with the authority to discipline employees, within the organization. On the evidence presented, the Court concludes that a reasonable fact-finder could find Plaintiff and his comparators similarly situated. *Srail,* 588 F.3d at 945.

Where, as here, Plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate expectations in a disparate manner, the second and fourth prongs

of the analysis merge — allowing Plaintiff to establish a *prima facie* case, stave off summary judgment for the time being, and proceed to the pretext inquiry. *E.g. Gates v. Caterpillar, Inc.*, 513 F.3d 680, 691 n.8 (7th Cir. 2008); *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1064 n.8 (7th Cir. 2003); *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002). "Pretext is a 'lie, specifically a phony reason for some action.'" *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 737 (7th Cir. 2006) (quoting *Russell v. Acme-Evans, Co.*, 51 F.3d 64, 68 (7th Cir. 1995)). Thus, to prove pretext, a plaintiff must show that "the employer's reason is not credible or that the reason is factually baseless." *Perez v. Illinois,* 488 F.3d 773, 777 (7th Cir. 2007).

Defendant's proffered non-retaliatory justification for Plaintiff's removal is that it was simply responding to Plaintiff's misconduct and following its uniform disciplinary procedure. But as discussed above, Plaintiff presented evidence that two similarly situated employees, who had not filed EEO complaints, were not disciplined as harshly for similar misconduct. Moreover, Plaintiff has presented evidence that he did not commit the charged misconduct because: (1) he was not required to follow Caminata's instructions before she was identified as a supervisor; (2) he did not fail to follow her instructions once she was identified as a supervisor; and (3) he

did not fail to follow the instructions of any other supervisor. Finally, it is contested whether Plaintiff's alleged misconduct is covered by Article 16.7 of the collective bargaining agreement such that removal was warranted as a departure from the standard progressive discipline procedure. These inconsistencies create a genuine issue of material fact as to whether Defendant's stated reason for removing Plaintiff was a pretext for retaliation.

## IV. CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment [ECF No. 12] is denied.

**IT IS SO ORDERED.**

	_____
	Harry D. Leinenweber, Judge
	United States District Court

Dated: January 29, 2016